ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **INCOM INVESTMENT, CORP y otros**<br><br>Recurrido<br><br>v.<br><br>**RAFAEL RACHID y otros**<br><br>Peticionario | KLCE202400253 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.:<br>**AR2020CV00837**<br><br>Sobre: Daños y Perjuicios |

Panel Especial integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y el Juez Monge Gómez.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de junio de 2024.

Mediante *Petición de Certiorari*, comparece ante este Foro Maridian Construction Group, Corp y el Matrimonio Rachid-Battle (Peticionarios) y solicitan que revisemos la *Resolución* emitida y notificada el 10 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI). Mediante la misma, el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por Incom Investment Corp. (Incom).

Por los fundamentos que expresamos a continuación, se deniega la expedición del auto de *certiorari* solicitado.

## I.

Surge del expediente que las corporaciones Incom y Maridian, a raíz de los daños causados por el huracán María, suscribieron un contrato para realizar la reparación del techo de dos edificios propiedad de Incom, utilizados para el almacenamiento de alimentos de los comedores escolares del Departamento de Educación. Las reparaciones serían costeadas con el pago de la reclamación que Incom recibió por parte de su asegurador. Para llevar a cabo las

reparaciones, Maridian subcontrató la compañía Cosme Group, LLC (Cosme). Los trabajos fueron realizados y posteriormente, como producto de unas filtraciones en el techo, Incom contrató a la compañía Green Shield Products, entidad dedicada a la manufactura de productos de sellado de techos, la cual emitió un informe en el que señaló que el almacén que trabajó Cosme fue inspeccionado y que existían deficiencias en los trabajos que fueron realizados.

Por lo anterior, Incom se reunió con Maridian y Cosme para discutir los resultados del informe de Green Shield Products y coordinar si los mismos iban a ser reparados. Sin embargo, y aun cuando alegadamente se adeudaban unos cambios de órdenes y un balance pendiente por pagar, Incom no permitió que Maridian y Cosme llevaran a cabo dichas reparaciones.

Así las cosas, el 21 de julio de 2021, Incom presentó una *Demanda* sobre incumplimiento de contrato, resolución del contrato y daños y perjuicios contra los peticionarios y Cosme.[1] En la demanda, alegó que para el año 2018, Incom contrató los servicios de Maridian para la impermeabilización de los techos de dos edificios que eran propiedad de Incom. Ambos edificios, ubicados en Arecibo y Canóvanas, respectivamente, eran alquilados a la Autoridad Escolar de Alimentos del Departamento de Educación. Las propiedades eran utilizadas para el almacenamiento de alimentos de las escuelas en Puerto Rico. Arguyó que las labores de impermeabilización realizadas por Maridian fueron deficientes, por lo que tuvieron que contratar los servicios de Green Shield Products para que evaluara dichas labores y las reparara. Como parte de la evaluación realizada por Green Shield Products concluyó que se

---

[1] La demanda fue enmendada el 14 de septiembre de 2020. Posteriormente, el 24 de febrero de 2021, fue enmendada nuevamente a los efectos de incluir a MAPFRE como aseguradora de Cosme.

debía remover todo el material aplicado por Maridian y Cosme en el edificio y comenzar nuevamente la labor. Incom enfatizó que, por un término de dos años y cuatro meses, transcurridos desde que se realizaron las labores, tuvo continuos y serios problemas con los inquilinos de las propiedades por las deficiencias del trabajo realizado, que resultaron en filtraciones, ocasionando la pérdida de los alimentos almacenados. Por lo anterior, solicitó la suma de $601,823.40 en concepto de daños, $198,200.90 en concepto de la remoción y disposición del material defectuoso y $250,000.00 en concepto de daños sufridos por el señor Vicente E. Ríos Marques, presidente de Incom.

El 27 de octubre de 2020, Maridian presentó su *Contestación a Demanda Enmendada y Reconvención.* En esta, negó la mayoría de las alegaciones presentadas en la demanda, y arguyó que Incom incumplió con el contrato habido entre las partes, y que los trabajos con los que sí cumplió, los hizo de manera parcial, deficiente y defectuosa. Por lo anterior, solicitó el pago de las cantidades adeudadas por Incom, ascendientes a $180,000.00. Finalmente, aseguró que Maridian cumplió con sus obligaciones contractuales para Incom, por lo que correspondía el pago de la cifra antes mencionada.

Luego de varios trámites procesales que resultan innecesarios mencionar, el 30 de marzo de 2023, Incom presentó una *Moción Solicitando Sentencia Sumaria* en la cual propuso 83 hechos incontrovertidos y el derecho aplicable en aras de procurar la desestimación de la demanda, disponiendo así de la totalidad del caso de epígrafe.[2] En esencia, consignó que contrató los servicios de

---

[2] Junto a la *Moción Solicitando Sentencia Sumaria,* Incom presentó los siguientes documentos como anejos: (1) Informe Green Shield – Sr. Tree, (2) Informe Anthony Noriega, (3) Informe Ricardo Ramos Cabeza, (4) Contrato suscrito entre Maridian e Incom, (5) "Purchase Order", (6) Foto Aérea Edificios, (7) Cheques de Incom, (8) Carta del Sr. Rachid a Cosme del 13 de marzo de 2020, (9) Carta Lcdo. Martínez Umpierre a abogados del 26 de abril de 2021, (10) Informe Wood, (11) Cotización Blue Green Roofing Solutions, (12) Carta del Lcdo. Martínez Umpierre al Sr.

Maridian para realizar labores de impermeabilización en el techo de un edificio ubicado en Arecibo, y que a su vez, Maridian subcontrató al Sr. Gilberto Rodríguez Cosme, en representación de Cosme. También alegó que las labores realizadas por Cosme fueron deficientes, y que no pudieron corregir el problema de las filtraciones, por lo que Incom se vio en la obligación de contratar a una nueva corporación para la remoción del trabajo realizado. Por lo anterior, alegó tuvieron pérdidas económicas ascendentes a $606,905.20.

En reacción, el 22 de mayo de 2023, los peticionarios instaron una *Oposición a Solicitud de Sentencia Sumaria*[3] mediante la cual aceptaron 11 de los hechos propuestos por Incom.[4] Asimismo, objetaron los hechos propuestos números 5-8, 10-24, 26-37, 39-40, 44-47, 50-51 y 53. A su entender, aun existía controversia sobre la identidad de las partes, sobre la descripción del techo y sobre los peritos a presentarse. Para ello, añadieron 5 propuestas de hechos incontrovertidos que, a su entender, fundamentaban su postura. Finalmente, suplicó al TPI que denegara el petitorio sumario interpuesto por entender que persisten controversias medulares.

El 26 de mayo de 2023, Incom presentó una *Moción al Amparo de la Regla 36.3 de las de Procedimiento Civil*, en la cual alegó que tanto Maridian como Cosme, en sus respectivas oposiciones, incumplieron crasamente con lo requerido por la Regla 36.3, inciso

---

Rachid del 10 de julio de 2020, (13) Certificación de Incorporación de Incom, (14) "Data Sheet", (15) Deposición del Sr. Ricardo Ramos Cabeza, (16) Deposición del Sr. Rachid – 18 de mayo de 2021, (17) Deposición del Sr. Rachid – 19 de mayo de 2021, (18) Deposición del Sr. Gilberto Rodríguez Cosme y (19) Deposición del Sr. Armando González.

[3] Junto a la *Oposición a Solicitud de Sentencia Sumaria*, Maridian presentó los siguientes documentos como anejos: (1) Deposición del Sr. Vicente Ríos Padilla, (2) Deposición del Ing. Rachid, (3) Deposición de Gilberto Rodríguez (Cosme), (4) Conduce ACHA Trading, (5) Email del 1 de octubre de 2019, (6) Deposición de Perito Ramos, (7) Deposición del Sr. Tree, (8) Email de acuerdos de reunión del 25 de abril de 2019, (9) Deposición del Sr. Anthony Noriega, (10) Carta de Krypton del 30 de abril de 2019, (11) Carta de Martínez Umpierre a abogados de 26 de abril de 2021, (12) Deposición de Armando González, (13) Declaración Jurada Ing. Rachid.

[4] Los hechos aceptados por Maridian fueron los siguientes: 1, 4, 13, 14, 29, 31, 63, 67, 68, 70 y 71.

(c) y (d). Ello, pues no objetaron correctamente los hechos incontrovertidos propuestos.

Evaluadas las posturas de ambas partes, el 10 de enero de 2024, el TPI dictó la *Resolución* que hoy revisamos. Mediante la misma, declaró No Ha Lugar la moción para que se dictara sentencia sumaria presentada por Incom. El referido dictamen formuló las siguientes determinaciones de hechos incontrovertidos:

1. La parte demandante, Incom Investment, Corp., es una corporación organizada bajo las Leyes del Estado Libre Asociado de Puerto Rico. Su presidente es, el Sr. Vicente E. Ríos Marques.
2. La co-demandada, Maridian, suscribió un contrato con Incom para realizar trabajos en un edificio de Incom, ubicado en el Municipio de Arecibo. Dicho contrato, se otorgó el 21 de marzo de 2018 y el mismo fue suscrito por el co-demandado, Rachid en su carácter de vicepresidente de Maridian. Conforme a dicho contrato, Maridian se comprometió a reemplazar el sistema de impermeabilización del techo de un edificio, propiedad de Incom en el Municipio de Arecibo. Maridian, abría de realizar los trabajos por la cantidad convenida de $426,700.00. Maridian incluiría en el costo, todos los equipos necesarios para realizar los trabajos. Maridian se comprometió a comenzar el trabajo a más tardar el día 15 de marzo de 2018 y de completarlo en el término de 90 días (véase, cláusulas 12 y 13 del contrato)
3. El trabajo como tal de la reparación del techo fue hecho por Cosme.
4. Rachid no tiene conocimiento si Cosme siguió las instrucciones de la data técnica para la aplicación de los productos.
5. Rachid no tiene conocimiento si el personal de Cosme tenía entrenamiento para la aplicación del producto.
6. Rachid no hizo gestiones con la fábrica de España para que le diera algunas instrucciones.
7. El contrato entre Maridian y Cosme ("Purchase Order") no establece como Cosme habrá de cobrar, no dice quién habrá de supervisar, no dice cuánto tiempo tiene para realizar el trabajo, no dice cuántos empleados debe tener, no dice quién habrá de suplir la maquinaria.
8. El único trabajo que Cosme hizo para Incom fue el techo de Arecibo.
9. El techo identificado como "A" es el techo plano en la foto (anejo 6).
10. En sus estudios de ingeniería en el Colegio de Mayagüez, [el Ingeniero Ricardo Ramos Cabeza] nunca cogió un curso sobre impermeabilización de techos.

11. El ingeniero Ramos ha realizado diez (10) publicaciones y ninguna de ellas está relacionada con impermeabilización de techo.

12. El Ingeniero Ramos ha hecho nueve presentaciones y ninguna de ellas tiene que ver con impermeabilización de techo.

13. El Ingeniero Ramos ha recibido ocho (8) "grants" y ninguno de ellos ha sido sobre el tema de impermeabilización de techos

14. El Ingeniero Ramos menciona en su "currículum vitae", catorce (14) actividades relacionadas con enseñanza y ninguna de ellas tiene que ver impermeabilización de techos.

15. El Ingeniero Ramos a través de los años, ha rendido labores como perito en Ingeniería al codemandado, Mapfre y en este momento, tiene alrededor de cinco (5) casos que está trabajando como perito de Mapfre.

16. Para rendir su informe pericial, le entregaron a Ramos copia del informe preparado por el Sr. Tree de Green Shield.

17. El Sr. Tree visitó el edificio el 13 de marzo de 2019 y su conclusión es que el trabajo realizado por Cosme hay que removerlo en su totalidad y hacerlo completamente nuevo, por razón de los múltiples defectos que hay en el mismo.

18. El Sr. Tree establece en su informe, que la superficie estaba suave y esponjosa ("soft and spongy"). El Sr. Tree establece que eso es una deficiencia. El propio perito de la parte demandada, Ing. Ramos admite que el techo "soft and spongy" podría ser una deficiencia.

19. Tree establece que no surge que el techo anterior haya sido removido a lo largo del perímetro de los bordes de las paredes hasta el interior de los drenajes del techo. Esas áreas, están sueltas y no sellaron propiamente. Las mismas tienen un alto riesgo de coladera.

20. Cosme no tomó ninguna prueba del producto que había tirado en el techo. Tampoco tomó pruebas para enviarlas a algún laboratorio, ni conoce persona alguna que hubiera tomado pruebas en el techo, ni ha enviado ninguna prueba del material tirado en techo a ningún laboratorio.

21. El Sr. Ríos contrató al Laboratorio Woods para que hiciera una prueba de resistencia y densidad del "foam" en el área del techo en controversia.

22. 300 kilos (kpa), es el equivalente a 43 psi.

23. El 23 de abril de 2021, Blue Green Roofing sometió una cotización para la impermeabilización del techo denominado "A" del almacén de Arecibo de Incom. La misma fue por a suma total de $241,164.00 y fue aprobada por el Sr. Ríos en representación de Incom Investment.

24. El costo total de la labor realizada por Blue Green fue de $241,164.00, incluyendo el costo de remover y disponer del uretano que había instalado Cosme.

25. Cosme comenzó a trabajar en el proyecto en abril de 2018.

26. Según Cosme, terminó el proyecto el 31 de octubre de 2019.

27. Entre febrero y mayo de 2019, mientras Cosme estaba efectivamente trabajando, fue allí el Sr. Pedro González, contratado por Maridian para hacer unas reparaciones.

28. Pedro González fue allí para hacer unas reparaciones en el techo que Cosme había trabajado. Fue a reparar unas áreas de espuma de poliuretano y aplicó poliuretano.

29. El 10 de julio de 2020, se entregó al Ingeniero Rachid, copia de una carta suscrita por Martínez Umpierre, en la cual, se le solicita abandonen las labores, ya que continúan las filtraciones y el trabajo ha sido sumamente deficiente, expresándole de que habrá de contratar otra empresa que realice el trabajo.

30. El Sr. Armando González Pagán, quien tuvo a su cargo remover todo el trabajo realizado por Cosme y hacerlo completamente nuevo, declaró que cuando fue a visitar el edificio para preparar una cotización, lo que vio no parecía ser un trabajo reciente ni terminado y que era una porquería de trabajo, mal hecho, estableciendo que la aplicación estaba blanda, que el "coating" se podía halar con la mano y despellejarlo, que había empozamientos donde quiera y que había áreas que se levantaban.

El foro primario concluyó que en este caso no procedía resolver el presente caso mediante el recurso extraordinario de la sentencia sumaria, por existir hechos en controversia que deben dilucidarse en un juicio en su fondo. En específico, detalló que los hechos sobre los cuales las partes no están de acuerdo, siendo así hechos controvertidos, son los siguientes: 3, 8-10, 11, 15-19, 23-25, 28, 30, 32-36, 39-44, 46-59, 61, 62, 65, 69, 72-74, 77-83.[5] Además, sostuvo la controversia sobre la existencia de negligencia por parte de Maridian y/o de Cosme.

Inconforme con la determinación del foro primario, el 25 de enero de 2024, los peticionarios presentaron una *Moción de Reconsideración*. En esta, señalaron que estaba de acuerdo con la determinación final de declarar No Ha Lugar la petición de Incom, y con la algunos de los hechos que entendió probados a tenor con la prueba sometida. Sin embargo, alegaron que 19 de esos hechos, no podían ser parte de los hechos incontrovertidos, pues constituyen

---

[5] Los hechos se numeran según fueron mencionados en la moción de sentencia sumaria presentada por Incom.

inferencias adversas, se basan en expresiones sacadas de contexto y se basan en documentos no autenticados y en testimonios de opinión de testigos no periciales. No obstante lo anterior, el foro primario declaró No Ha Lugar la solicitud.

Aún inconforme, acuden ante este Foro mediante el recurso que nos ocupa y le imputan al TPI la comisión de los siguientes errores:

> Primer Error: Erró el Tribunal de Primera Instancia al concluir probados 19 hechos sometidos en la sentencia sumaria de la parte demandante sobre los cuales existe controversia a tenor con la Regla 36 de Procedimiento Civil y la jurisprudencia interpretativa.

> Segundo Error: Erró el Tribunal de Primera Instancia al concluir que existe controversia sobre hechos sometidos por los peticionarios sobre los cuales no hubo objeción de la parte demandante y fueron probados de conformidad a la Regla 36 de Procedimiento Civil y la jurisprudencia interpretativa.

El 25 de marzo de 2024, Incom presentó una *Moción Solicitando Desestimación por Incumplimiento con el Reglamento*, en la cual expresó que los peticionarios incumplieron con la Regla 70 (A) del Reglamento del Tribunal de Apelaciones, por lo que correspondía la desestimación del recurso. El 26 de marzo de 2024, los peticionarios presentaron su oposición, y el 8 de abril de 2024, declaramos No Ha Lugar la solicitud de Incom mediante *Resolución.*

Además, concedimos a Incom un término de 15 días para expresarse sobre el recurso de autos. Estos no comparecieron, por lo que procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**A.**

El auto de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical,*

154 DPR 249 (2001). Su expedición está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019). A esos efectos, dicha Regla dispone —en lo concerniente— lo siguiente:

> El recurso de *certiorari*, para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Regla 52.1 de Procedimiento Civil, *supra.*

Por otro lado, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Serrano Picón v.*

*Multinational Life Ins*, 212 DPR 981 (2023).[6] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión,* supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas,* supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la

---

[6] Véase, además: *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Ferrer et. al. v. PRTC,* 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).

sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los

cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas*, supra, pág. 119.

**III.**

En el presente caso, los peticionarios nos solicitan que revisemos la *Resolución* que emitió el TPI, a los efectos de declarar No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por Incom. Específicamente, en su primer señalamiento de error, argumentan que el foro primario incidió al concluir probados 19 hechos sometidos en la solicitud de sentencia sumaria de Incom, sobre las cuales aún existe controversia. En armonía con lo anterior, en su segundo señalamiento de error, destacan que el TPI también erró al concluir que existía controversia sobre hechos sobre los cuales no hubo objeción, que fueron probados mediante la prueba presentada, de conformidad a la Regla 36 de Procedimiento Civil. Veamos.

En su recurso, Maridian señala que aunque está de acuerdo con la determinación final del foro primario, de declarar No Ha Lugar la solicitud de sentencia sumaria presentada por Incom, entiende que el TPI erró al incluir como parte de la *Resolución* una serie de hechos que entendió probados a tenor con la prueba sometida por las partes y sus argumentos. De los hechos incontrovertidos propuestos por el foro primario, asegura que 19 de ellos no deben, ni pueden considerarse que no están en controversia, pues existe prueba en contrario que demuestra que estos constituyen una inferencia adversa a la parte promovida, se basan en expresiones incompletas, sacadas de contexto y en documentos no autenticados.

En la *Resolución* emitida y notificada el 10 de enero de 2024, el TPI formuló treinta (30) determinaciones de hechos incontrovertidos. Concluyó que, luego de evaluados los documentos anejados a la moción de sentencia sumaria y a la oposición, no procedía resolver el caso mediante el recurso extraordinario de la sentencia sumaria. Ello, toda vez que existen hechos que no se lograron establecer con la evidencia anejada y de los cuales las

partes no estaban de acuerdo. Por lo anterior, el foro primario detalló que los hechos sobre los cuales aún existe controversia son los siguientes: 3, 8-11, 15-19, 23-25, 28, 30, 32-36, 39-44, 46-59, 61, 62, 65, 69, 72-74, 77-83 de la *Moción Solicitando Sentencia Sumaria* presentada por Incom. Además, sostuvo la controversia sobre la existencia de negligencia por parte de Maridian y/o de Cosme.

Al examinar el expediente y el pronunciamiento sujeto a revisión, determinamos denegar la expedición del auto de *certiorari*. Según el tracto fáctico del caso, resulta evidente que existe controversia sobre múltiples hechos relacionados a: la relación contractual entre Maridian e Incom; los trabajos realizados por Cosme en el techo de la propiedad; inspecciones llevadas a cabo; el informe emitido por Green Shield; las muestras que fueron o no tomadas al material utilizado; las reparaciones adicionales y los daños reclamados en la demanda, entre otros, que requieren la celebración de un juicio y no deben resolverse por la vía sumaria. Además, queda aun pendiente la controversia sobre la existencia de negligencia por parte de Maridian y/o Cosme.

Así las cosas, entendemos que la decisión del TPI fue razonable. Por lo tanto, somos del criterio que el foro primario no erró, ni abusó de su discreción en su determinación, ni en el manejo del caso. La parte peticionaria no ha demostrado que el TPI actuó con pasión, prejuicio, parcialidad o que incurrió en error manifiesto al emitir la *Resolución* impugnada.

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones